## 18985

Teddy PATTERSON, Appellant, v. STATE of South Carolina, *et al.,*
Respondents

(171 S. E. (2d) 235)

*Messrs. Daniel R. McLeod, Attorney General,* and *Em-*
*met H. Clair* and *Robert H. Hood, Assistant Attorneys*
*General,* of Columbia, *for Respondents,*

November 13, 1969.

LITTLEJOHN, Justice.

The appellant was found guilty of murder with recommendation to mercy by a jury at the September 1964 term of the Court of General Sessions of Abbeville County, and is now serving a sentence of life imprisonment therefor. From the conviction no appeal was taken. On August 30,

1965, he filed a petition in the court below for a writ of *habeas corpus* seeking a new trial. Pursuant to this petition several hearings were held at which extensive testimony was taken. An order was filed on May 19, 1967 which denied the relief sought, resulting in this appeal.

The first question presented for our determination as phrased by the State is as follows: "Was appellant represented by competent and effective counsel at his trial in compliance with the constitutional right to counsel and due process of law?" The same question is phrased by appellant as follows: "Was appellant denied his constitutional right to counsel?"

On this issue the appellant argues first that he made statements to law enforcement officers and signed a confession before he was allowed to talk to his attorney. Even though these were not admitted in evidence against him, he contends that the very fact that such took place put him in a psychological state that impeded his ability to converse with his own attorney in aid of his defense. He further submits that his attorney stated in open court in his presence at the June term that he felt he could not adequately represent the appellant, and that such shattered the attorney-client relationship and impeded preparation of a defense and the presentation of the case when it was tried three months later.

The basic objection which the appellant makes relative to his counsel does not relate to the attorney's performance. At the *habeas corpus* hearing below the appellant said, "I consider Mr. Clay competent, he is a very fine attorney, but in my case, there being friction between Mr. Clay and myself, I felt that I couldn't relate my thoughts to him whereby he could counsel me properly."

A brief history of the killing and of the incidents leading up to the trial is necessary for a determination of the question posed. On Friday, February 28, 1964 at about eight o'clock in the evening Mrs. Mary Frances Lowe, a divorcee, was riding around with a friend, James Davis. She was

driving the car. The appellant, who had dated Mrs. Lowe not more than two times previously, followed the couple for some time and until they stopped at an eating place. The deceased was sitting on the passenger side of the front seat and Mrs. Lowe was under the steering wheel. The appellant got out of his automobile with a .22 automatic rifle and shot Davis three or four times, causing his death. The appellant then took Mrs. Lowe in his own car and held her at the home of his mother until early the following (Saturday) morning. After holding officers and others at bay with the use of the rifle he was taken into custody.

The family of the appellant contacted Attorney Gerald Clay on Saturday morning. Mr. Clay was not allowed to see the appellant on Saturday or Sunday. On Monday the police said that the appellant would be available whenever desired, but on Tuesday, March 3, he was placed in the State penitentiary in Columbia, apparently for security reasons. On March 11 the attorney and the appellant conferred for the first time. The appellant was described as being in an emotional state and was difficult to communicate with.

The trial was set for the June 1964 term of court before Judge Griffith. At that term of court Attorney Clay petitioned to be relieved as counsel because his fee had not been paid. The judge granted the petition but immediately designated the same attorney as court-appointed counsel. Counsel then stated in open court in the presence of the appellant that he did not feel that he could adequately represent the appellant. A continuance until the September term was granted. Attorney Clay states that he took this position in order to get a continuance and in order to make up a record to set the stage for a new trial if the appellant was sentenced to the electric chair, and states that he told the appellant why he made the statement. It was a tactical maneuver.

Appellant admits that he did not at any time indicate to his attorney or to Judge Griffith at the June term or to the trial judge at the September term any dissatisfaction with

the attorney chosen by his family, and in the last analysis appointed by the court. The transcript of the Coroner's Inquest, the trial proceedings and the *habeas corpus* hearing are all a part of the record before us and the conclusion is inescapable that Attorney Clay represented the appellant with the utmost professional ability, acquired a good result for his client under the circumstances, and indeed his newly appointed counsel appearing in this *habeas corpus* proceeding does not argue to the contrary. His sole contention on this issue is that his constitutional right to counsel and effective representation has not been protected. Though he argues that prejudice has been shown, there is absolutely nothing in the record that points out wherein counsel failed to do anything he should have done or wherein his services were unskillful.

Counsel argues that the fact that the appellant was not permitted to be with his attorney as early as normally would be the case, and the fact that counsel stated that he did not feel that he could represent appellant adequately, conditioned him to feel hopeless and to feel the electric chair was definitely his lot. There was no evidence convincing to the lower court and none convincing to this court that the conduct of counsel or the conduct of any representative of the State brought about such thinking or impaired the appellant's ability to participate in the defense of the case. The showing is purely subjective. The appellant asserts it, but has failed to prove it. The State is not required to disprove it. The court does not have to believe it.

The appellant complains that he did not want to take the stand and testify but did so upon recommendation of his attorney. He was not coerced. His only defense was self-defense, which the jury understandably did not believe. One of the things a defendant has to affirmatively prove in a plea of self-defense is that the defendant believed that he was in danger of losing his own life or suffering serious bodily harm. It is difficult, if not impossible, to prove what a defendant "believes" unless he does take the

stand and testify. Had he not testified he would apparently have been without even a semblance of a defense. If his attorney recommended that he take the stand, in so doing he served his client well.

The psychological state the appellant describes himself as being in is an understandable result of the conduct he admitted. In addition to a charge of murder he must have realized that he could also be charged with kidnapping. The sense of hopelessness and fear of the electric chair cannot be logically attributed to the conduct of anyone except the appellant.

Assuming, but not so deciding, that any statement taken between the time of the killing and the time appellant first saw his attorney was not proper, it must be pointed out that no prejudice has been shown since the same was not admitted in evidence. Appellant was represented by counsel at all critical stages. *Hamilton v. Alabama,* 368 U. S. 52, 82 S. Ct. 157, 7 L. Ed. (2d) 114 (1961).

Usually the bare assertion by a petitioner that he was deprived of adequate and effective assistance of counsel is insufficient. 39 C. J. S. *Habeas Corpus* § 100c at 678 (1944). This is not a case where the record is silent and from which the presumption of a denial of right of counsel is permissible. *Pitt v. MacDougall,* 245 S. C. 98, 138 S. E. (2d) 840 (1964). Here the record speaks out. The State produced convincing evidence which shows the petitioner was represented by competent court-appointed counsel. A conflict was present between the mere assertions of the petitioner and the evidence of the State. The conflict has been decided by the trial court against the petitioner and we hold properly so. Petitioner has not proved his assertions by the preponderance of the evidence. *Tucker v. State,* 248 S. C. 344, 149 S. E. (2d) 769 (1966).

The second question concerns the fact that there was stamped on the back of the indictment with a hand stamp

the following unsigned guilty plea: "I Hereby Appear In My Own Proper Person, Waive Grand Jury Action and Plead Guilty." There were two lines under this, one signed by the solicitor with the title "Solicitor" printed under it, the other, apparently for the defendant's signature, was blank.

The argument under this question by the defendant is that as the indictment went to the Grand and Petit juries with this statement stamped on it, it was highly damaging because of the speculations it would arouse in the jurors' minds.

This court held in *State v. Stephens*, 13 S. C. 285 ■ (1879) that there would not be an assumption of prejudice when the defendant who was convicted of murder but awarded a new trial was tried the second time upon the same indictment, and the indictment with the former verdict and judgment written upon it was submitted to the inspection of the jury. The same must hold true here as to an unsigned guilty plea. Prejudice will not be assumed; and as there is no showing of prejudice by the defendant, the question must be answered in favor of the State.

Both questions submitted by the appellant being answered in the negative, the judgment is

Affirmed.

Moss, C. J. and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.